E. GREGG TOBLER (5636)
Tobler Law Office, LLC
118 North 1600 West, Suite B
Mapleton, UT 84664
Telephone: (801) 491-6040
Facsimile: (801) 491-6050
Email: gtobler@toblerlawoffice.net
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KEMAL MAKASCI,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>UTAH VALLEY UNIVERSITY, UTAH STATE BOARD OF REGENTS,<br><br>　　　　Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT UVU'S MOTION TO DISMISS UNDER RULE 12**<br><br>Case No.: 2:19-cv-00425-CW<br><br>Judge: Clark Waddoups |

Plaintiff, by and through his counsel, hereby submits his Memorandum in Opposition to defendant Utah Valley University's (hereafter "UVU" or "University") Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Defendant Utah State Board of Regents ("Board") appears to not be represented by the State's Attorney General in this Motion or at all in the case. Having thus failed to respond by way of Motion or Answer, the Board may now be in default.

1

Based upon the following information, arguments and authorities, plaintiff requests that the court deny defendant's Motion.

## SUMMARY OF ISSUES AND POSITION

Plaintiff asserts herein that defendant's Motion should be denied because:

1. The Court must consider the entire Complaint and plaintiff's Complaint includes at least one additional claim not covered under the Motion, a claim for wrongful termination under the common law.

2. The statute of limitations included in the Utah Protection of the Public Employees Act ("Utah Whistleblower Act") was waived (or tolled) based upon Plaintiff's previous written Notice of its claims to defendant.

3. Plaintiff has sued the University and the Board, made up of individual persons. Plaintiff asserts that these individuals, as personal representatives of the State Board of Higher Education and the University, deprived him of his constitutional civil rights of due process and freedom of speech. The Board is apparently not party to the Motion.

4. Taken as a whole, Plaintiff's complaint establishes several plausible claims upon which relief can be granted.

## KEY BACKGROUND FACTS

1. Plaintiff was employed by Defendant UVU as a "tenured" Associate Professor in the Department of Exercise Science and Outdoor Recreation. Plaintiff's Complaint at paragraph 8.

2. Plaintiff, and more specifically, Plaintiff's language in class, was the subject of a complaint or complaints by a small number of his students. Plaintiff's Complaint at Paragraph 38.

3. The students' complaints to the University officials and the Title IX Office led to an investigation by the Title IX Office. Plaintiff's Complaint at paragraphs 25-31.

4. The Title IX Office investigation, conducted by a former UVU Director, established inconsistent and unsupported conclusions. Plaintiff's Complaint at Paragraph 28-30 and 64 and **Exhibit A** (Letter to Melissa Frost dated May 31, 2017) attached hereto and incorporated herein.

5. Based on the Title IX investigation and its inconsistent conclusions, UVU first suspended on November 17, 2016, and then terminated Plaintiff's employment on October 20, 2017. Plaintiff's Complaint at Paragraphs 44 and 89 and **Exhibit B** (Letter to Laura Carlson dated July 28, 2017) attached hereto and incorporated herein.

6. Following the Notice of Termination of his employment, Plaintiff did participate in a policy-driven, internal appeal process. Plaintiff's Complaint at Paragraphs 74-89.

7.      After the date of his termination on October 20, 2017, Plaintiff filed a Complaint with the federal Equal Employment Opportunity Commission and the federal Office of Civil Rights and provided Notice to Defendant of his specific claims, including claims of retaliation.  See **Exhibit C** attached hereto and incorporated herein.

9.      Plaintiff filed the instant action in the Fourth District Court on May 30, 2019.  See Court Record in this case.

10.     Defendant removed said case to Federal Court on or about June 20, 2019, and alleged in its Cover Sheet that the federal court had subject matter jurisdiction to hear the case.  See Court Record.

## STANDARD OF REVIEW

Defendant asserts two Federal Rules of Civil Procedure as bases for its Motion, Rule 12(b)(1), and Rule 12(b)(6).

### A.     Rule 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss a claim when proper jurisdiction is lacking.

### B.     Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss a claim when the Plaintiff "fails to state a claim upon which relief can be granted." The Court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties may present at trial, but to "assess whether the Plaintiff's Complaint alone is legally sufficient to state a claim for

which relief may be grated." Dubbs. V. Head Start, Inc., 336 F.3d 1194 (10th Cir. 2003)(quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)).

A court reviewing the sufficiency of a complaint presumes all of the plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." Hall v. Bellmon, 935 F.2d 1106, 1108 (10th Cir. 1991(citing Scheuer v. Rhodes, 416 U.S. 232 (1974)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has alleged facts that allow "the court to draw a reasonable inference the defendant is liable for the misconduct alleged." Id.

Lastly and perhaps more importantly for purposes of this Motion, it is well-established that "courts must consider the complaint in its entirety," not just a portion of it. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

## ARGUMENT

### I. RESPONSE TO DEFENDANT'S ARGUMENT REGARDING A LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1)

Although it is not clearly articulated in Defendants' Motion, Defendant seems to argue that because the Statute of Limitations identified in the Whistleblower Act (180 days) has already run, that this fact deprives the Court of subject-matter jurisdiction under Rule 12(b)(1). Plaintiff respectfully disagrees.

Plaintiff argues that its complaint includes a number of claims, including common law wrongful termination, that are not subject to the same statute of limitations. The statute of limitation for the common law wrongful termination based in a written contract is six (6) years. (Utah Code Ann. 78-2-101). Plaintiff was a tenured associate professor at the University to entered into a teaching contract each year of his employment.

Therefore, based on these additional included claims in the Complaint, there is in fact subject matter jurisdiction established under Rule 12(b)(1), including an opportunity for the court to accept and decide the case.

In addition, in its application for removal from state court, Defendant maintained, acknowledged and asserted that the federal court did in fact have subject matter jurisdiction and that was, at least in part, the basis for its argument for removal from state to federal court. (See Defendants' Civil Cover Sheet identified as Document 7 in the current case file). Defendant is now estopped from claiming that the federal court has subject-matter jurisdiction for purposes of removal, but denying that same jurisdiction for purposes of its Motion to Dismiss.

## II. RESPONSE TO DEFENDANT'S ARGUMENT REGARDING THE WHISTLEBLOWER ACT 180-DAY STATUTE OF LIMITATIONS

### A. The Entire Complaint

As set forth above in the Standards of Review, a Court must consider the Complaint "in its entirety" when evaluating a Motion to Dismiss for failure to state claim. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). The Plaintiff's

Complaint specifically states in relevant part: "Plaintiff also seeks redress from UVU and the BOARD for wrongful termination under the common law and for retaliation for having made a discrimination complaint." Complaint at Page 2. Plaintiff's header for its First Cause of Action on Page 14 of the Complaint also cites "Wrongful Termination" as a cause of action along with Whistleblower and Retaliation.

Plaintiff's factual pleadings also reflect a clear and accurate picture of what happened to him. These allegations, which were carefully prepared, establish both a factual background for potential relief and also establish the elements for a common law wrongful termination claim.

Those key elements are (as referenced in the Plaintiff's Complaint):

1. Plaintiff was employed as a professor with UVU for 13 years;
2. Plaintiff complained to UVU about inaccurate and incomplete Title IX investigations and discrimination against him;
3. Plaintiff also asserted that he was set-up for termination by a small group of students and one faculty colleague;
4. The Director of the Title IX Office at UVU who performed the investigation on Professor Makasci was later fired by the University. She subsequently sued and obtained a settlement;
5. Plaintiff did not say the things that he was alleged to have said by the University and did not violate the policies or do the things which he was

7

6. alleged to have done and, given the opportunity, will be able to prove the same; and

7. Plaintiff's employment was suspended on November 17, 2017, and terminated on October 20, 2019.

It is well established that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss." Dunn v. Castro, 621 F.3d 1196, 1205 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

Defendant fails to acknowledge or to even argue that Plaintiff has a right to pursue its common law claim of wrongful termination against Defendants. The Statute of limitations for said common law claims is six (6) years based upon written contract (Utah Code Ann. § 78B-2-101 et seq.).

**B.     Waiver and/or Tolling of 180-Day Statute of Limitations**

Courts have previously recognized and acknowledged situations where a Defendant has waived the Statute of Limitations or where the statute of Limitations has been waived or tolled. Youren v. Tintic School District, 343 F.3d 1296, 1307 (10th Cir. 2003).

Beginning immediately after Plaintiff's termination, counsel for Plaintiff provided clear written Notice to UVU of his claims of retaliation and intent to file suit based on his termination from the University, including all of the issues that led to that decision.

In addition, Plaintiff also filed discrimination complaints and correspondence with the Equal Employment Opportunity Commission ("EEOC"), which provided notice to UVU of the Plaintiff's allegations and claims (see Exhibit C) Copies of such correspondence was provided to UVU within the 180-day period mandated by the Whistleblower Act.

Plaintiff asserts, as in the Youren case, that UVU's receipt of this Notice constituted a Waiver of the 180-day Statute of Limitations under the Whistleblower Act.

### III. RESPONSE TO DEFENDANT'S ARGUMENT THAT PLAINTIFF'S CONSTITUTIONAL CLAIMS DO NOT ADDRESS A PERSON

Plaintiff does in fact seek the constitutional protections secured by 42 U.S. Section 1983 as referenced in Defendants' Motion. His termination was based upon statements that he allegedly made in class and statements that should have been protected speech under the First Amendment.

During his appeal, Plaintiff was also deprived of his due process rights. He was not permitted to confront his accusers—the students who initiated the Complaints against him. There have also been other instances where the Plaintiff's civil rights were violated by the University and its personnel.

The person who was responsible for performing the shoddy Title IX Investigation was no longer at the University when this action was filed. She had previously filed a lawsuit against the University and received a settlement. Thus, she was not available to

sue by-name as part of the lawsuit.

If the ability to hold a University responsible for civil rights violations in an employment termination context requires the naming of certain persons who actively facilitated those civil rights deprivations, then Plaintiff requests that the Court grant permission to amend his Complaint to include the names of such persons, several of which are no longer employed by the University.

## CONCLUSION

Plaintiff's complaint clearly recites at least one specific claim that Defendant fails to recognize in its Motion—the claim of common law wrongful termination. The factual background contained in the Complaint also substantiates the basis for the claim and establishes the requisite elements.

Plaintiff also provided Notice to UVU within the required 180 days of his intent to claim retaliation and wrongful termination and other causes of action. Thus, under the cited authority, the Plaintiff complied with the notice requirement and UVU had notice of the claim and waived its right to bar the Plaintiff's claim based upon the Whistleblower Act 180-day statute of limitations.

Wherefore, Plaintiff respectfully requests that the Motion to Dismiss be denied. If, however, the Court determines to grant Defendant's Motion, Plaintiff respectfully requests that Plaintiff be allowed to amend his Complaint.

DATED this 15th day of August, 2019.

                                            TOBLER LAW OFFICE, LC

                                            _____
                                            E. Gregg Tobler
                                            *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 15th day of August, 2019, I caused a true and correct copy of the foregoing to be served via the court's electronic filing and email to the following:

Daniel R. Widdison
Utah Attorney General's Office
160 East 300 South, 6th Floor
P.O. Box 140856
Salt Lake City, UT  84114-0856

                                            _____
                                            E. Gregg Tobler

# Exhibit A

TOBLER LAW OFFICE, LC

E. GREGG TOBLER
gtobler@toblerlawoffice.net

May 31, 2017
Via Email / First Class Mail

Melissa Frost, Director
EEO/AA / Title IX Office
Utah Valley University
800 West University Parkway
Orem, UT 84058

Re:   Retaliation Complaint against Kemal Makasci
      Written Complaint by Kemal Makasci against Shaunna McGhie
      Supplemental Information / Evidence

Dear Ms. Frost:

    Thank you for your patience while we procured and organized the additional information to support Dr. Makasci's defense of the spurious charges made against him and information to support the discrimination Complaint he made against Dr. McGhie. This letter supplements my letter of May 24, 2017, and all previous communications.

Summary of Charges/Complaints

    There are at least three (3) current pending actions of which we are aware involving Dr. Makasci and the Utah Valley University ("UVU") Title IX/EEO Office. The first is a Complaint against Dr. Makasci from your office dated March 27, 2016. The second is the alleged "Retaliation" Complaint against Dr. Makasci, dated November 17, 2016 (this is when Dr. Makasci was suspended from his position at the University). The third is a relatively recent Discrimination Complaint initiated by Dr. Makasci against his colleague, Shaunna McGhie, and several UVU students who assisted and/or conspired with her.

1.   March 27, 2016 Complaint

    We do not know the current status of this complaint. Dr. Makasci was questioned once in connection with this Complaint. He was also provided with information regarding the allegations made against him. However, he has never received any kind of written Decision or Finding regarding this complaint and investigation.

    The investigation apparently continued through the summer months of 2016. It was used as a basis for Dr. Makasci's alleged retaliatory actions as referenced below. We want to know the status of this Complaint and seek a copy of any written determination or decision. UVU Policy 162 requires that the investigation summary be provided to the responsible university administrator "no later than 50 calendar days" from the time the investigation is initiated. This policy has certainly not been followed in this case, or in the subsequent retaliation complaint.

118 North 1600 West, Suite B, Mapleton, UT  84664 / Tel. (801) 491-6040 Fax (801) 491-6050

2. <u>November 17, 2016 Retaliation Complaint and Suspension</u>

On November 17, 2016, Dr. Makasci was summarily suspended from his teaching position at UVU. He has now been on suspension for over 200 days. Ms. Clemes has indicated that there was something that he said in his class that was so egregious and hostile and inflammatory and retaliatory that allowing him to continue to teach "was not an option." We have requested access to the class audiotape to identify exactly what was said. However, up to the present time, the audiotape of the class has not been provided to us for review. Dr. Makasci denies having made any retaliatory statement whatsoever.

On April 12, 2017, you orally informed Dr. Makasci that you had reached a Preliminary Finding in this matter. You asserted to him that the Investigation had identified certain actions that he took that were "retaliatory." Dr. Makasci was invited to provide any additional information related to that investigation for consideration. He did in fact submit additional information to be considered in connection with that investigation, including the filing of a Formal Complaint of Discrimination against his colleague, Dr. Shaunna McGhie. Dr. Makasci asserts that the Complaint made against him was the result of ongoing animas from Dr. McGhie.

3. <u>Discrimination Complaint against Shaunna McGhie</u>

Dr. McGhie's discriminatory behaviors toward Dr. Makasci have been ongoing for many, many years. The two parties were required to participate in a prior mediation of their differences in 2016. Dr. McGhie's behaviors toward Dr. Makasci have exhibited themselves in several ways over this time. Initially, as the Department Coordinator, Dr. McGhie would simply deny requests made by Dr. Makasci for funds and equipment for his programs, while approving similar requests from others. She also took every opportunity to disparage him to other colleagues (and students). She also accused him of duplicating or overlapping courses and she used his course objectives and curriculum for her own courses. See the attached copy of Course Syllabi that reflects the use of Dr. Makasci's objectives.

More recently, Dr. McGhie attempted to incite students to "act-up" in Dr. Makasci's classes. This occurred in the Spring Semester, 2016. Upon information and belief, certain of Dr. Makasci's students, who were also students of Dr. McGhie, went to her on a regular basis to complain against Dr. Makasci. They complained about the strict requirements for his classes and they complained that he was difficult to understand. Dr. McGhie told them to go ahead and wear sunglasses when playing football and slippers when playing field hockey, despite the obvious safety hazard. Dr. Makasci had asked the students on several occasions to please remove all dangerous objects. The videos reflect that one student was injured during the course of play.

In certain videotapes of classes, one can see that the students did not respect either Dr. Makasci or his class rules. At other times, Dr. McGhie made it clear that she wanted to teach the classes that Dr. Makasci had been assigned to teach. She is now apparently teaching those courses. Upon information and belief, Dr. McGhie has also changed the objectives of courses that Dr. Makasci was previously assigned to teach. The changes to his course objectives included items that Dr. Makasci disagreed with Dr. McGhie on.

## Setting Dr. Makasci up by Putting Problem-Students Back in his Class

During the Spring Semester, 2016, several students in Dr. Makasci's PETE 2330 Team Sports for Secondary Physical Education Teachers Class began to act strangely toward him and specifically began to act-up and act-out in class. The names of these students are: Alyssa S. Meinzer; Jacob B. Bunleng; Samantha Nielson, Curtis D. Ownens, Kevin James Paulson, and Casey Ann Romero.

One of the students, Alyssa S. Meinzer, after the semester was over, came to Dr. Makasci and apologized for her behavior and the behavior of others that Semester. The Department Chair, Michael Bohne, also told Dr. Makasci that he had seen and heard students coming out of Shaunna McGhie's office and they were talking in a negative way about Dr. Makasci. This was in the Fall of 2016. There have also been other former students who came to Dr. Makasci's office and told him that Dr. McGhis was talking negatively about Dr. Makasci's teaching and personal skills. Upon information and belief, Dr. McGhie had spoken to many of the same students and had encouraged them to act-up in Dr. Makasci's Fall 2016 class and told them that they did not need to follow the class rules…. We think that it is imperative that your office talk with these witnesses and any others who can verify these events.

In the Fall Semester, 2016, many of these same problematic students were again placed in Dr. Makasci's PETE 4250 and 4260 Classes. The Department and University essentially set Dr. Makasci up to fail as several of these students with an of ax to grind—students who had misbehaved badly in his previously class—were placed in his class again.

You are invited to review certain videotapes and documents that are contained in a DropBox folder. This folder will be made available to you in connection with this correspondence. We anticipate that it will be available later this evening or tomorrow. The videos and documents reflect a general disrespect for Dr. Makasci and a reasonable basis for his alleged complaint.

A summary of the video segments is also attached hereto. Obviously, we do not assert that all of the videos reflect specific discrimination. However, they do represent a pattern of conduct that has persisted since Dr. McGhie initiated her campaign against Dr. Makasci and has persisted over the last year.

Upon receipt of this information, please contact me with any questions. Thank you.

Very Truly Yours,

TOBLER LAW OFFICE, LC

E. Gregg Tobler

Enclosures
Cc:   Kemal Makasci

# Exhibit B

## TOBLER LAW OFFICE, LC

E. GREGG TOBLER
gtobler@toblerlawoffice.net

July 28, 2017
Via Email / First Class Mail

Laura Carlson, Acting Director
EEO/AA / Title IX Office
Utah Valley University
800 West University Parkway
Orem, UT 84058

Re: **Dr. Kemal Makasci—Response to Email of July 21, 2017**

Dear Ms. Carlson:

This letter is in response to your email correspondence of last Friday, July 21, 2017.

You are correct that Dr. Makasci alleges that his recent Notice of Termination was issued for retaliatory reasons in violation of federal and state laws. He made a Complaint of Discrimination through your Office on May 31, 2017. About six weeks later, on July 6, 2017, he was notified by the Dean of his College that his employment was being terminated. The timing of his proposed termination alone suggests retaliation and an improper handling of his Complaint and cases.

The Dean's letter asserted that Dr. Makasci was being terminated for a "retaliation resulting in a hostile education environment sufficient to warrant termination in accordance with Policy 162." However, we assert that this alleged basis for termination was only a pretext to retaliate against him and to terminate his employment. Much of the factual basis relied upon by Dean Fairbanks to support the termination decision is false and inaccurate and even taken-out-of-context. This is the basis for the claim of retaliation.

It should be obvious to you that each of the individuals at Utah Valley University ("UVU"), including Department Chairmen, Deans, Title IX Staff, Administrators, Vice Presidents and President, all represent the University. When acting within the scope of their employment, the University is responsible for what they do. When Dr. Makasci alleges discrimination and retaliation, he is alleging it against the University. Dr. Kemal is employed and paid by the University. The adverse action that has been taken against him has been taken by the University. The Notice may have come from individuals like Dean Fairbanks, but the Dean represents the University. It is our position that Dean Fairbanks did not make the decision to terminate Dr. Makasci on his own. He is being directed by the University Administration and Office of General Counsel.

As we discussed briefly yesterday, once Dr. Makasci substantiates an allegation of retaliation (or discrimination), which he has now done, federal law and the EEOC regulations shift the burden of proof back to the University to identify a non-retaliatory/non-discriminatory basis for its adverse employment action. What that means is that the University must establish

its claims by a preponderance of the evidence. Therefore, the current burden of proof is not on Dr. Makasci, it is on the University to establish a non-retaliatory basis for the proposed termination. We do not believe the University will be able to meet its burden.

Over the last several months, Dr. Makasci has provided a great deal of information and documentation to support his claims. Upon information and belief, this information has not been fully reviewed and considered by the investigators. For example, we can see that there has been little or no review of the video evidence that Dr. Makasci provided. There have also been substantiated claims of ongoing bias in the investigation process. Melissa Frost and Jed Gibson, both key people involved in the investigation of Dr. Makasci's claims over the last year and a half, are now gone. The University has now hired an outside attorney/investigator to assist with its investigations. It seems as though the Title IX Office is in disarray.

In addition to the foregoing, there are also several Policy Issues that are having a chilling or retaliatory effect on Dr. Makasci. A number of the Policies that were in effect just a few short months ago—when he initially made his claims—have now been fundamentally changed. Do we use the Policies that existed at the time of the Complaints or subsequent revisions to those policies? One thing that is clear is that enforcement of certain policies, including portions of Policies 162 and 165, potentially deny Dr. Makasci of his due process rights. As we have also pointed out previously, some of the policies are inconsistent with each other.

Your email suggests that you are "holding on forming a review hearing panel on your appeal, so that I may conduct a preliminary review of these new allegations." This may be your prerogative. Policy 162, Section 5.11.8, however, mandates that the Title IX Coordinator or designee shall <u>promptly</u> convent three-member review panel from a pool of faculty…. A failure to do so may also be considered to be additional retaliation and a further denial of Dr. Makasci's due process rights.

Yesterday, you told me that Dr. Makasci was a good guy. I agreed with you. This "good guy" does not deserve this kind of treatment from the University. This is not how you treat a 14-year professional. This is not how you treat a person who has taught thousands of students without incident and donated hundreds of hours for the good of the University in coaching (the UVU Soccer teams) and service. His good name, career and his personal integrity have now been irreparably damaged.

We look forward to hearing from you.

Very Truly Yours,

TOBLER LAW OFFICE, LC

*E. Gregg Tobler*
E. Gregg Tobler

Cc: Kemal Makasci
Karen Clemes—UVU

# Exhibit C

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 540-2017-03048 |

Utah Anti-Discrimination & Labor Division and EEOC
*State or local Agency, if any*

**Name** (indicate Mr., Ms., Mrs.): Kemal Makasci
**Home Phone** (Incl. Area Code): (801) 836-7373
**Date of Birth**: 1964
**Street Address / City, State and ZIP Code**: 354 E. 1420 S., Apt 354, Orem, UT 84058

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

**Name**: UTAH VALLEY UNIVERSITY
**No. Employees, Members**: 300 +
**Phone No.**: (801) 863-8000
**Street Address / City, State and ZIP Code**: 800 W. University Pkwy., Orem, UT 84058

**DISCRIMINATION BASED ON** (Check appropriate box(es).):
☐ RACE  ☐ COLOR  ☐ SEX  ☒ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest: 11-17-2016    Latest: 10-05-2017
☒ CONTINUING ACTION

**THE PARTICULARS ARE** (If additional paper is needed, attach extra sheet(s)):

Please see the attached document(s) for the particulars regarding discrimination by my employer.

I believe I have been discriminated against by my employer based on my national origin (Turkish) and my religion (Muslim) in violation of Title VII of the Civil Rights Act of 1964, as amended.

I believe I have been retaliated against by the employer for my complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 10.10.2017    *Charging Party Signature*

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)